**Andrew W. Muir, Esq.**
Muir Law Offices
560 Van Reed Road, Suite 307
Wyomissing, PA 19610
attorneymuir@outlook.com

*Attorney for Defendant C/T*
*Install America, LLC*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIRGINIA COLE, *on behalf of herself and others similarly situated*, | Case No.: 5:25-cv-03531-CH |
| Plaintiff, | Hon.  Catherine Henry, U.S.D.J. |
| vs. | |
| C/T INSTALL AMERICA, LLC | |
| Defendant. | |

## DEFENDANT C/T INSTALL AMERICA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ...................................................................................3

III.  STANDARD OF REVIEW .....................................................................................4

IV.   LEGAL ARGUMENT...............................................................................................5

    A.    Plaintiff's Claims Fail as a Matter of Law Because They Are Not Covered
           Under the TCPA ...........................................................................................5

        1.    Cell Phones Are Not "Residential Telephones" Under the TCPA .............5

        2.    The DNC Provision Does Not Apply To Text Messages. ..........................9

    B.    Plaintiff Failed to Pled That She Is A "Residential Telephone Subscriber"
           Protected By The DNC Provision.......................................................................12

    C.    Plaintiff Fails To Plead Facts Suggesting "Willful" Or "Knowing"
           Violations Of The TCPA. ...................................................................................15

V.    CONCLUSION........................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................................4

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  591 U.S. 610 (2020) ..............................................................................................7, 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 444 (2007)..................................................................................................4

*BSD-360, LLC v. Phil. Indem. Ins. Co.,*
  580 F. Supp. 3d 92 (E.D. Pa. 2022)..........................................................................4

*Cacho v. McCarthy & Kelly LLP,*
  739 F. Supp. 3d 195 (S.D.N.Y. 2024)....................................................................13

*Chennette v. Porch.com, Inc.*
  50 F.4th 1217 (9th Cir. 2022) ...................................................................................7

*Conn. Nat'l Bank v. Germain,*
  503 U.S. 249 (1992)..................................................................................................8

*Cunningham v. Caribbean Cruise Lines, Inc.,*
  No. 15-cv-62580, 2016 WL 7494871 (S.D. Fla. Dec. 29, 2016)..............................5

*Cunningham v. Enagic USA, Inc.,*
  No. 15-cv-00847, 2017 WL 2719992 (M.D. Tenn. June 23, 2017) ..........................8

*Cunningham v. Politi,*
  No. 18-cv-00362, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019).........................5, 8

*Cunningham v. Spectrum Tax Relief LLC,*
  No. 16-cv-02283, 2017 WL 3222559 (M.D. Tenn. July 7, 2017) ............................8

*Cunningham v. Sunshine Consulting Grp., LLC,*
  No. 16-cv-02921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) .......................6, 8

*Davis v. CVS Pharmacy, Inc.,*
  No 24-cv-477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)....................9, 11, 12

*Dolan v. U.S. Postal Serv.,*
  546 U.S. 481 (2006)..................................................................................................9

*Gaker v. Q3M Ins. Sols.*,
　No. 22-cv-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) .........................................6, 8

*Gilliam v. Reliance First Cap., LLC*,
　No. 21-cv-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................................1, 6, 13

*Gorton v. Air & Liquid Sys. Corp.*,
　303 F. Supp. 3d 278 (M.D. Pa. 2018) ......................................................................................14

*Gozlon-Peretz v. United States*,
　498 U.S. 395 (1991)....................................................................................................................7

*Hamdan v. Rumsfeld*,
　548 U.S. 557 (2006)....................................................................................................................7

*Hicks v. Alarm.com, Inc.*,
　No. 20-cv-532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ...................................................13

*Hoover v. Monarch Recovery Mgmt., Inc.*,
　888 F. Supp. 2d 589 (E.D. Pa. 2012) .........................................................................................4

*Johnson v. Palmer Admin. Servs., Inc.*,
　No. 22-cv-00121, 2022 WL 17546957 (E.D. Tex. Oct. 20, 2022) ............................................8

*Jones v. Blackstone Med. Servs., LLC*,
　No. 24-cv-01074, 2025 WL 2042764 (C.D. Ill. July 21, 2025)....................................9, 11, 12

*Keating v. Peterson's Nelnet, LLC*,
　615 F. App'x 365 (6th Cir. 2015) .............................................................................................10

*Loper Bright Enters. v. Raimondo*,
　603 U.S. 369 (2024).....................................................................................................6, 9, 10, 12

*McLaughlin Chiropractic Associates Inc. v. McKesson Corp.*,
　606 U.S. 146 (2005).............................................................................................................9, 12

*Moore v. Triumph CSR Acquisition, LLC*,
　No. 23-cv-04659, 2023 WL 8601528 (N.D. Ill. Dec. 12, 2023)......................................5, 6, 8

*Morgan v. U.S. Xpress, Inc.*,
　No. 17-cv-00085, 2018 WL 3580775 (W.D. Va. July 25, 2018) .............................................8

*Perrong v. Victory Phones LLC*,
　No. 20-cv-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021) ..................................................5

*Riffin v. Consolidated Rail Corp.*,
　363 F. Supp. 3d 569 (E.D. Pa. 2019) .......................................................................................14

iii

*In re Rules & Regs. Implementing the TCPA,*
    18 FCC Rcd. 14014 (2003) .................................................................10

*In re Rules & Regs. Implementing the TCPA,*
    30 FCC Rcd. 7961 (2015) ..................................................................2

*Shelton v. Fast Advance Funding, LLC,*
    378 F. Supp. 3d 356 (E.D. Pa. 2019) .............................................6, 7

*Smith v. RB Distrib., Inc.,*
    498 F. Supp. 3d 645 (E.D. Pa. 2020) ...............................................4

*Virginia Cole v. Affluent Ads LLC d/b/a Leadnomics and Rapid Response
    Marketing,*
    No. 2:24-cv-01173 (E.D. Pa.) .......................................................1, 2

*Virginia Cole v. Affluent Ads LLC d/b/a Leadnomics and Rapid Response
    Marketing,* No. 24-cv-1173 (E.D. Pa.) ...........................................14

*Virginia Cole v. Genstone Enterprises, LLC,*
    No. 3:25-cv-00639 (M.D. Tenn.) .....................................................1

*Zemel v. CSC Holdings LLC,*
    No. 16-cv-4064, 2017 WL 1503995 (D.N.J. Apr. 26, 2017) ..............10

**Statutes**

47 U.S.C. §§ 227, *et seq* ..................................................................... *passim*

**Other Authorities**

47 C.F.R. § 64.1200(c) –(d) ...........................................................5, 8, 11

Federal Rule of Civil Procedure Rule 12(b)(6) ................................1, 2, 4

Webster's Third New Int'l Dictionary of the English Language Unabridged
    (1993) ...............................................................................................6

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant C/T Install America, LLC ("Install America" or "Defendant"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff Virginia Cole's ("Plaintiff") Complaint with prejudice.

## I.    <u>INTRODUCTION</u>

This putative class action is one of several filed by Plaintiff and her counsel which allege, in conclusory fashion and without sufficient factual support, that a defendant violated certain "Do Not Call" ("DNC") requirements of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA") by calling one of several numbers she appears to have obtained and registered to the National Do Not Call Registry ("DNC Registry").[1]  In this case, the Complaint alleges that Install America violated the TCPA by sending two (2) text messages to Plaintiff's purported "personal residential telephone number" concerning window installation products and services.

This Court should dismiss the Complaint for several reasons.  *First,* Plaintiff's TCPA claim fails to state a plausible claim for relief because Plaintiff does not plead that she is a "residential telephone subscriber."   Specifically, Plaintiff's claim must be dismissed because (1) cellular telephone users, like Plaintiff, are not "residential telephone subscribers" under the TCPA, and (2) Plaintiff, beyond the conclusory allegations which are not entitled to any presumption of truth at the pleading stage, fails to plead sufficient facts establishing that she uses the subject phone for "residential" purposes within the meaning of the TCPA.   Plaintiff cannot simply parrot the

---

[1] *See e.g., Virginia Cole v. Genstone Enterprises, LLC*, No. 3:25-cv-00639 (M.D. Tenn.); *Virginia Cole v. Affluent Ads LLC d/b/a Leadnomics and Rapid Response Marketing*, No. 2:24-cv-01173 (E.D. Pa.) (attached to the Declaration of Andrew Muir as **Exhibit A**)

statutory text and regurgitate the other legal elements of her asserted claim and expect to survive

dismissal – especially when she has pled contradictory facts in prior lawsuits.[2]

     *Second*, Plaintiff's TCPA claim suffers from a fatal legal defect, in that the plain language

of the statutory text of Section 227(c) of the TCPA does not regulate text messages, and, thus, they

are excluded from protection under this provision.  As that is the only basis for Plaintiff's TCPA

claim, it must be dismissed under Rule 12(b)(6). And *third*, Plaintiff has not sufficiently alleged a

"willful" or "knowing" violation to enable her to recover treble damages.[3]

     District courts across the country have widely recognized that in TCPA cases, and

especially in putative TCPA class actions, they must dutifully exercise their role as a gatekeeper

under the Federal Rules to ensure claims meet the plausibility threshold before defendants are

subjected to the rigors and high costs of discovery.[4]  Consequently, deficient TCPA complaints,

like the one here, are routinely dismissed by federal district courts at the pleading stage.  This

Court should dismiss the Complaint with prejudice.

---

[2]  As will be described in more detail below (*see infra* IV(A)), Plaintiff's complaint filed in *Cole v. Affluent Ads LLC*, No. 2:24-cv-01173 (E.D. Pa.) alleged the following: (1) her telephone number is "615-XXX-8353"; (2) that number is "used for residential purposes" and "for personal purposes"; and (3) "Plaintiff registered her number on the National Do Not Call Registry on April 5, 2023."  (Exhibit A, ¶¶ 13-14, 16)

[3] It is unclear if Plaintiff is even seeking treble damages.  In section (g) of the Prayer for Relief, Plaintiff asks the Court to award "Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(c)(5)(C)." (Dkt. No. 1 at 10.)  Under 227(c)(5)(C), if the court finds that a defendant "willfully or knowingly" violated that section of the TCPA, it may, in its discretion, award treble damages.  The only allegation that possibly relates to this is located in Paragraph 20 of the Complaint which states "[u]pon information and good faith belief, Defendant knew, or should have known," that the 615 Number was registered with the DNC Registry. (*Id.*, ¶ 20.) Despite the ambiguity of whether Plaintiff is seeking treble damages or this is simply a holdover request from the hundreds of other boilerplate complaints filed across the country, Install America will address this within its memorandum.

[4]  This is especially true given that, as noted by the FCC, the TCPA has unwittingly spawned a cottage industry of class action litigation and "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" due to its exploitation by entrepreneurial serial plaintiffs and their counsel. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015).

## II.    **FACTUAL BACKGROUND**

Plaintiff Virginia Cole filed her complaint against Install America on July 10, 2025, alleging violations of the TCPA. (Dkt. No. 1, ¶ 1.)  Plaintiff alleges that since "May of 2024" she has been the "regular and sole user of her cellular telephone number (615) XXX-XXXX" (hereinafter the "615 Number") (*Id.*, ¶ 8.)   She alleges that this is "her personal residential telephone number" and that she has not used it for "business or commercial purposes." (*Id.*, ¶¶ 9-10.)  Plaintiff alleges that her telephone number "has been registered on the [Do Not Call] Registry since May 15, 2024." (*Id.*, ¶ 11.)  She alleges that she received "at least two text messages," though only identifies two, from Install America after her phone number was registered on the DNC Registry. (*Id.*, ¶¶ 12-13).

Plaintiff further alleges that "the subject text messages were intended for someone other than, and unknown to, Plaintiff." (*Id.*, ¶ 15.)  This is incorrect.  On September 16, 2024, one week prior to receiving the first text message at issue, Plaintiff visited a website, www.homewindowprices.org (the "Website"), and completed a web form, in order to request a quote regarding a window replacement.  While completing this web form, Plaintiff entered her name (Virginia Cole) and telephone number (the 615 Number), and agreed to be contacted by home improvement companies, including Install America, at the 615 Number.  The 615 Number corresponds to a Tennessee area code, which is the state in which Plaintiff resides, and also corresponds to the address information inputted into the web form. (Dkt. No. 1, ¶ 6.)  Additionally, the Internet Protocol ("IP") address associated with the device that completed the web form is geolocated to Hartsville, Tennessee, which again corresponds to the address information inputted into the web form and is located within Trousdale County, the county where Plaintiff resides. (*Id.*)

Install America understands that, unfortunately, these facts, though supported by documentary evidence, cannot be considered by the Court on a 12(b)(6) motion. Yet, the Complaint should still be dismissed, as a matter of law, based on Plaintiff's failure to adequately plead a claim upon which relief can be granted.

## III.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 444, 470 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *BSD-360, LLC v. Phil. Indem. Ins. Co.*, 580 F. Supp. 3d 92, 98 (E.D. Pa. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must do more than merely "parrot the statutory standards" of a claim that they are pleading. *Smith v. RB Distrib., Inc.*, 498 F. Supp. 3d 645, 656 (E.D. Pa. 2020).

Thus, ruling on a motion to dismiss "is context-specific and requires the court to draw on its judicial experience and common sense to determine if the facts pled in the complaint have nudged [plaintiff's] claims over the line from [merely] conceivable [or possible] to plausible." *Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589, 594 (E.D. Pa. 2012) (internal quotation marks and citation omitted) (alteration in original). Application of these well-established principles requires that the Complaint be dismissed with prejudice.

4

IV.    **LEGAL ARGUMENT**

A.    **Plaintiff's Claims Fail as a Matter of Law Because They Are Not Covered Under the TCPA**

Plaintiff's claim under the TCPA fails as a matter of law.  Section 227(c) provides a private right of action for persons who have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" prescribed under Section 227(c) of the TCPA.  47 U.S.C. § 227(c)(5).  The corresponding federal regulation is 47 C.F.R. § 64.1200(c), which provides: "No person or entity shall initiate any telephone solicitation to . . . **[a] residential telephone subscriber** who has registered his or her telephone number on the [DNC Registry]."  47 C.F.R. § 64.1200(c)(2) (emphasis added).

But therein lies the problem for Plaintiff.  Because Plaintiff's claim openly centers on texts allegedly sent to her cell phone, they fail for two reasons: first, because cell phones are not residential telephones, Plaintiff necessarily cannot be a residential telephone subscriber under the TCPA. And second, Plaintiff only received text messages—not "telephone calls" under the plain text of the statute, so she cannot state a claim as a matter of law.

1.    **Cell Phones Are Not "Residential Telephones" Under the TCPA**

Contrary to the allegations of Plaintiff's Complaint, "[a] cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023); *Perrong v. Victory Phones LLC*, No. 20-cv-5317, 2021 WL 3007258, at *3 (E.D. Pa. July 15, 2021) (in reviewing §227(b) finding that "the statute does reflect Congress' intent to distinguish between cell phones and residential landlines."). Indeed, courts regularly find that Section 227(c)'s limitation to only residential telephone subscribers excludes complaints where "Plaintiff alleges only the use of his cellular phone[]." *Cunningham v. Politi*, No. 18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019)

(collecting cases); *Cunningham v. Caribbean Cruise Lines, Inc.*, No. 15-cv-62580, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) ("[T]he Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing.").

The TCPA's text and structure provide evidence of Congress's intent to distinguish liability related to communications with "residential" and cellular phones.

*First,* the plain text of the TCPA shows that it does not apply to cellular phones. "[T]he language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Cunningham v. Sunshine Consulting Grp., LLC*, No. 16-cv-02921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (quoting 47 U.S.C. § 227(c)(1)), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018). This is because "[c]ell phones do not present the same concerns as residential phones," as their "mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." *Gaker v. Q3M Ins. Sols.*, No. 22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). In contrast, "[a] residential phone is a home phone that is hard-wired into the building. It means a land-line. It is *residential* in a very literal sense." *Moore*, 2023 WL 8601528, at *2 (alteration in original).

By codifying that Section 227(c) only applied to residential telephone subscribers and not cell phone users, Congress intended for cell phones to not be included by the provision; "[t]hat is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (internal citation omitted). At the time the TCPA was enacted in 1991, the term "residential" meant being "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." *Residential*, Webster's Third New Int'l Dictionary of the English Language

6

Unabridged (1993).  This same logic was used by Judge Kenney when he questioned "whether cellular telephone subscribers were intended to be included in the definition of 'residential telephone subscriber[.]'" *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019).  Judge Kenney noted that by affording common sense definitions of the terms chosen by Congress, a "residential telephone" describes "a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Id.* (quoting Merriam-Webster). This Court should find similarly.

**Second**, the structure of the TCPA shows that Congress did not intend Section 227(c) to apply to cell phones.  When courts interpret statutory text, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).  Here, "the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Shelton*, 378 F. Supp. 3d at 362 n.7.  And "it is generally presumed that Congress act[ed] intentionally and purposely in the disparate inclusion and exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 405-406 (1991) (internal citation omitted).

The legislative history of the TCPA confirms that this was no accident: Congress expressly considered the interests unique to cell phones when it enumerated "cellular" telephones in Section 227(b).  *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring) (explaining that Congress banned robocalls to cell phones "to address the problem" caused by "many cell phone users ha[ving] to pay for each call").  A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . .

cellular telephones." *Chennette v. Porch.com, Inc.* 50 F.4th 1217, 1232 (9th Cir. 2022) (Ikuta, J., dissenting in part) (citing 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen)).   Had Congress intended for Section 227(c) to apply to cell phones, it could have done so.   It did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

Indeed, the "majority of the persuasive precedent" under the TCPA have applied a similar textual analysis to find that the term "residential telephone" does not include cell phones.   *Johnson v. Palmer Admin. Servs., Inc.*, No. 22-cv-00121, 2022 WL 17546957, at \*8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022) (discussing the meaning of "residential telephone subscriber" under 47 C.F.R. § 64.1200(d)); *see also, e.g., Moore,* 2023 WL 8601528, at \*2 (explaining that the TCPA's use of "residential telephone line" and "cellular telephone service" in close proximity to one another "is a strong clue that the two terms do not mean the same thing."); *Morgan v. U.S. Xpress, Inc.*, No. 17-cv-00085, 2018 WL 3580775, at \*2 (W.D. Va. July 25, 2018) ("Congress used different language to discuss cell phones and residential lines, further demonstrating that they are not interchangeable.")   The same is true for the do-not-call provision, under which courts regularly find that Section 227(c)'s limitation to only residential telephone subscribers excludes complaints where "Plaintiff alleges only the use of his cellular phone[]."   *Politi*, 2019 WL 2519702, at \*4 (collecting cases); see also *Gaker*, 2023 WL 2472649, at \*3*; Sunshine Consulting Grp.*, 2018 WL 3496538, at \*6; *Cunningham v. Spectrum Tax Relief LLC*, No. 16-cv-02283, 2017 WL 3222559, at \*7 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, No. 15-cv-00847, 2017 WL 2719992, at \*5-6 (M.D. Tenn. June 23, 2017).

It is also necessary to remember that, at the time the TCPA was enacted, cellular phones were in use – as indicated by their reference throughout the TCPA.  47 U.S.C. § 227(b)(1)(A)(iii) ("any telephone number assigned to a … cellular telephone service …"). Congress was deliberate in determining when to include cellular telephones within the TCPA and explicitly chose not to do so in Section 227(c).

***Third,*** in addition to the plain text and structure of the TCPA, a common sense interpretation of the statute further counsels that Plaintiff's cell phone is not a residential device as that term is used in the TCPA.  When interpreting statutory text without a definition, the Supreme Court has noted that "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities.  Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Here, as discussed above, Congress distinguished "residential" devices and "cellular" devices in other sections of the TCPA.  *See e.g., Barr*, 591 U.S. at 617 n.3 (acknowledging the separate restrictions for cell phones and residential phones).  Under every mode of statutory construction, these are two separate terms.  Should the Court interpret "residential" to broadly include cell phones, it would render this distinction superfluous and fundamentally rewrite the statute.

The Court should therefore accept the TCPA's plain meaning, and dismiss Plaintiff's claim as it is solely predicated on allegations that text messages were sent to her cellular phone.

### 2.    The DNC Provision Does Not Apply To Text Messages.

Plaintiff's claim should also be dismissed because Section 227(c) of the TCPA does not apply to text messages. *See Jones v. Blackstone Med. Servs., LLC*, No. 24-cv-01074, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025) ("Pursuant to *McLaughlin* and *Loper Bright*, the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing

regulations, Section 227(c)(5) does not apply to text messages."); *see also Davis v. CVS Pharmacy, Inc.*, No 24-cv-477, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) ("The statutory text here *is* clear, and a text message is not a 'telephone call.'")   Text messages – which are the basis of Plaintiff's Complaint – did not yet exist when the TCPA was enacted in 1991 and under a plain reading of the statute, Section 227(c) could not be read to encompass text messages.

In its 2003 Order, it was the FCC, not Congress, that determined the TCPA applies to text messages. *See In re Rules & Regs. Implementing the TCPA,* 18 FCC Rcd. 14014, 14115 (2003). But, Congress could not have intended to include text messages within the conduct prohibited by the TCPA as the TCPA was enacted before the advent of text messaging technology.  Thus, at the time of its passing, the TCPA could *only* refer to telephone calls. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) ("It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA …"); *see also Loper Bright,* 603 U.S. at 400 ("That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'").

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights." 47 U.S.C. §227(c)(1).  A text message, like an email, does not implicate the same privacy concerns that a phone call does.  *See e.g. Zemel v. CSC Holdings LLC*, No. 16-cv-4064, 2017 WL 1503995, at *5 (D.N.J. Apr. 26, 2017) ("Reading and responding to [three] text messages, and the time it required, could not have caused Plaintiff the annoyance Congress intended to prevent … The text messages were sent to Plaintiff's wireless cellular telephone, which does not implicate the same privacy concern" as a call placed to the plaintiff's residence.)  The reason for this is simple: a text message does not ring incessantly, does not require any action by the recipient to put an end to the invasion of privacy, and for many

cellular phone users does not invade any privacy at all because no sounds accompanies the receipt

of the text message.  On this point, Plaintiff has not alleged any such invasion of her privacy upon

receipt of the two text messages from Install America.  The statutory purpose of the TCPA supports

a finding that Section 227(c) of the TCPA was never meant to apply to text messages.

The court in *Jones* and *Davis* recently concurred.  In *Jones*, plaintiffs alleged they received

telemarketing text messages and calls to their cellular telephones from defendant in violation of

Section 227(c) of the TCPA.  2025 WL 2042764, at *1.  Defendant sought to dismiss plaintiffs'

claims, arguing the provisions of Section 227(c) do not prohibit text messages because the phrase

"text message" and "SMS message" are wholly absent from Section 227(c)(5) and its

implementing regulations, 47 C.F.R. § 64.1200(c)-(d). *Id.* at *3.  The court agreed and explained

that "only 'call', 'telephone call', and 'artificial or prerecorded-voice telephone call' appear in

Section 227(c) and its implementing regulations." The court further explained that "telephone call"

is not a defined term in the statute, which remains silent as to its application to text messages.  *Id.*

at *4.  Significantly, the court in *Jones* noted that "[t]ext messaging was not an available

technology in 1991, and thus 'telephone call' would not have included text messages or SMS

messages." *Id.*  The court further noted that, "in today's American parlance, 'telephone call' means

something entirely different from 'text message'. Thus, under a plain reading, Section 227(c)(5)

of the TCPA does not regulate text messages." *Id*.  The court concluded by finding that plaintiffs

had failed to state a claim under the TCPA "given that allegedly 'violative text messages' stand

'at the core of Plaintiffs' factual allegations.'" *Id.* at *6.

In *Davis,* like here, defendant's motion to dismiss presented two core issues: (1) "[a]re text

messages 'telephone calls' for purposes of [Section 227(c)(5)]?" and (2) "is a cell phone subscriber

a 'residential telephone subscriber'?" 2025 WL 2491195, at *1.  The court in *Davis* did not address

11

the latter question, as it determined that "no ordinary person would think of a text message as a '*telephone* call.'" *Id.* (emphasis in original).  Relying on common sense definitions and a straight forward statutory interpretation, the court in *Davis* held that "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position" and showed that "Congress does not use the term 'telephone call' to encompass all 'messages.'" *Id.* at *2.  The court further dismissed plaintiff's argument that Congress would not seek to regulate text messages and telephone calls while limiting a private right of action to only telephone calls – "[b]ut Congress can (and does) provide private rights of action narrower than its full breadth of regulation.  The very provision at issue (§227(c)(5)) proves the point.  It limits the private right to those who received two or more unwanted calls, even when a single call would violate the TCPA." *Id.* at *3.  Thus, whatever Congress's reasoning, "it clearly limited the private right to hose receiving 'telephone calls.'" *Id.*

Here, Plaintiff's factual allegations are based entirely on the receipt of two (2) text messages from Install America at least 31 days after her cellular phone was allegedly registered on the DNC Registry. (Compl. ¶ 12.)  Following the Supreme Court's decisions in *Loper Bright* and *McLaughlin Chiropractic Associates Inc. v. McKesson Corp.*, 606 U.S. 146 (2005), this Court should, as *Jones* and *Davis* did, independently interpret Section 227(c), and apply a plain reading to the text to determine that text messages are not within the purview of the protections afforded by Section 227(c)(5).  Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

**B.    Plaintiff Failed to Pled That She Is A "Residential Telephone Subscriber" Protected By The DNC Provision.**

Section 227(c) of the TCPA is designed to "protect '*residential telephone subscribers*' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. §227(c)(1) (emphasis added). Even setting aside whether or not cellular telephone subscribers

should receive the protections of the DNC Provision, to survive dismissal, Plaintiff still must plausibly allege facts establishing that her telephone number is actually used for "residential" purposes. Here, Plaintiff alleges only that her cellular telephone number is her "personal residential telephone number" and is not used "for business or commercial purposes." (Dkt. No. 1, ¶¶ 9-10.)

These allegations represent the paradigm for improperly using conclusory statements to support boilerplate recitations of the elements of a cause of action. Courts regularly hold that a plaintiff must plead more than these type of "conclusory allegations" to adequately plead they are a "residential telephone subscriber." *Compare Gilliam v. Reliance First Cap., LLC*, No. 21-cv-4774, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (holding "[plaintiff] fails to specifically allege any facts from which the Court could infer that the phone number is used for residential purposes" where "Plaintiff's Complaint contains conclusory allegations that his cell phone was not 'associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use'"); *Hicks v. Alarm.com, Inc.*, No. 20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (granting motion to dismiss where the plaintiff alleged only that his cell phone was "not associated with a business and is for personal use."); *with Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 208 (S.D.N.Y. 2024) (holding that the complaint properly alleges that plaintiff was a "residential subscriber" because the complaint alleged that the cellphone was used "for personal, family, and household use[,]" that plaintiff maintained "no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family[,] and that the phone at issue was used for "sending and receiving emails, timing food when cooking, and sending and receiving text messages[.]")

In the absence of particularized facts to demonstrate that Plaintiff's use of the 615 number was for residential (that is, at-home) purposes, Plaintiff has failed to state a claim for which relief can be granted. This is *especially* true, given the conspicuous circumstances surrounding this particular individual and her use of telephone numbers to, likely, manufacture TCPA cases. Here, as noted earlier, Plaintiff has alleged that since "May of 2024" she has been the "regular and sole user of her cellular telephone number (615) XXX-XXXX[.]" (Dkt. No.1, ¶ 8.) She alleges that this is "her personal residential telephone number" and that she has not used it for "business or commercial purposes." (*Id.*, ¶¶ 9-10.) Plaintiff alleges that her telephone number "has been registered on the [Do Not Call] Registry since May 15, 2024." (*Id.*, ¶ 11.)

Yet, five (5) months ago, in *Virginia Cole v. Affluent Ads LLC d/b/a Leadnomics and Rapid Response Marketing*, No. 24-cv-1173 (E.D. Pa.)[5] Plaintiff provided a court of this district with a different set of allegations. There, Plaintiff alleged that the "telephone number, 615-XXX-8353, is Plaintiff's residential telephone line" which she uses for "residential purposes" and "personal purposes"(Muir Decl., Ex. A, ¶¶ 13-14.) Plaintiff then goes on to state that she "registered her number on the National Do Not Call Registry on April 5, 2023." (*Id.*, ¶ 16.) Based on these dueling pleadings, and the lack of any allegations as to how either number in question is used, Plaintiff has failed to carry her burden that she is a "residential telephone subscriber" under the TCPA. Absent any allegations to the contrary, the most plausibly conclusion ascertained from Plaintiff's own admissions is that she, as a serial TCPA litigant, maintains a multitude of telephone numbers in order to manufacture TCPA claims against unsuspecting businesses. Give these circumstances, Plaintiff, if given leave to amend, should be required to plead details regarding her acquisition of

---

[5] "It is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider 'matters of public record, including court files and records …" *Riffin v. Consolidated Rail Corp.*, 363 F. Supp. 3d 569, 572 n.2 (E.D. Pa. 2019) (citing *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018)).

the 615 Number, how she uses it on a daily basis, and whether she currently maintains any other telephone numbers and, if so, whether those numbers are also registered on the DNC Registry.

### C.    Plaintiff Fails To Plead Facts Suggesting "Willful" Or "Knowing" Violations Of The TCPA.

The TCPA allows for an award of treble damages for violations done "willfully or knowingly." 47 U.S.C. § 227(c)(5).  Buried within the boilerplate allegations in the Complaint, Plaintiff is (potentially) seeking treble damages as a result of the purported TCPA violations committed by Install America.  Yet, the Complaint is devoid of any non-conclusory allegations that would allow this Court to find that she has adequately plead treble damages under the TCPA. The bare assertion that "[u]pon information and good faith belief, Defendant knew, or should have known" that the 615 Number "was registered with the DNC Registry" is insufficient to stave off dismissal. (Dkt. No. 1, ¶ 20.)

Two cases within the Third Circuit help illustrate this point.  In *Champion v. Credit Pros Int'l Corp.*, the plaintiff alleged "that the '56 text messages came from 56 different phone numbers' because Defendants sought 'to avoid getting blocked.' Moreover, the alleged text messages included misspelled words, which further indicates that Defendants sought to appear legitimate." No. 21-cv-10814, 2023 WL 3452354, at *5 (D.N.J. May 15, 2023).  In addition, the plaintiff alleged that defendants "went to great lengths to hide their identity in the text messages to avoid liability under the TCPA." *Id.*  Based on these allegations, the court concluded that "these factual allegations suggest awareness of wrongdoing." *Id.*

In *Atkinson v. Choice Home Warranty*, the plaintiff alleged "that Defendant's actions were 'malicious, intentional, willful, reckless, wanton, and negligent' and had the 'purpose of harassing the Plaintiff." No. 22-cv-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023).  On their own, the court found that "these allegations are conclusory[.]" *Id.*  It was only with the addition of further

15

allegations that Plaintiff "asked to be removed from Defendant's call list on three occasions but continued to receive calls" which made the court determine, after drawing all reasonable inferences in favor of plaintiff, that the complaint sufficiently plead the availability of treble damages. *Id.*

Here, Plaintiff makes clear that the purpose of the two (2) text messages sent by Install America was not to harass her, but instead was "to advertise and market the Defendant's business or services." (Dkt. No.1, ¶ 16.)  Significantly, Plaintiff makes no allegation that she ever requested to not be contacted by Install America after receiving the first text message or that Install America's actions were intended to obfuscate its identity.  Without any additional allegations pled, the request for treble damages must be considered insufficient.  Thus, Plaintiff's request for treble damages should be dismissed.

## V.    **<u>CONCLUSION</u>**

Based on the foregoing, defendant Install America respectfully requests that Plaintiff's Complaint be dismissed with prejudice.

/s/ Andrew W. Muir
    Andrew W. Muir, Esq.
    Muir Law Offices
    560 Van Reed Road, Suite 307
    Wyomissing, PA 19610
    attorneymuir@outlook.com

    *Attorney for Defendant C/T Install America, LLC*

16