**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VIRGINIA COLE *on behalf of herself and others similarly situated*, | ) ) | Civil Action No.: 5:25-cv-03531-CH |
| | ) | Class Action Complaint |
| Plaintiff, | ) ) | |
| | ) | Jury Trial Demanded |
| v. | ) | |
| | ) | |
| C/T INSTALL AMERICA, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

**Table of Contents**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 3

   I.   47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers .... 3

   II.   Text Messages are "Calls" under the TCPA, as nearly every Court to consider the question has held ................................................................................................... 8

    a.   Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages ........................................................... 11

    b.   Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated ..... 12

    c.   Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day ........................................................................................................... 16

    d.   Furthermore, Defendant's argument asks this Court to apply the Incorrect Standard of Review .......................................................................................... 18

   III.   Plaintiff Plausibly Alleges She Is a "Residential Telephone Subscriber" — Confirmed by Her Declaration that Refutes the Defendant's Attacks ................................. 23

   IV.   The Plaintiff has pled a plausible claim for treble damages ................................... 25

CONCLUSION ...................................................................................................... 25

## Table of Authorities

**Cases**

**Ashland Hosp. Corp. v. Serv. Employees Int'l Union, 708 F.3d 737 (6th Cir. 2013)** ............ 21

**Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195 (D. Mass. 2021)** ............................ 9

**Bell v. New Jersey, 461 U.S. 773 (1983)** ................................................................................ 10

**Breda v. Cellco Partnership, 934 F.3d 1 (1st Cir. 2019)** ....................................................... 9

**Cacho v. McCarthy & Kelly LLP, 739 F. Supp. 3d 195 (S.D.N.Y. 2024)** ........................ 2, 4, 6

**Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016)** .............................................................. 9

**Charvat v. Allstate Corp., 29 F. Supp. 3d 1147 (N.D. Ill. 2014)** ........................................... 25

**Charvat v. Echostar Satellite, LLC, 630 F.3d 459 (6th Cir. 2010)** ........................................ 20

**Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986)** ................................... 10

**Cunningham v. Nationwide Sec. Solutions, Inc., 2023 WL 5162396 (E.D. Tex. June 26, 2023)** .................................................................................................................................................. 7

**Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)** ............................................................................................................................................. 15, 20

**Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152 (9th Cir. 2012)** ....................................... 12

**Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023)** ..................................................................... 9

**Ferrell v. Colourpop Cosmetics, LLC, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal. Jul. 8, 2025)** ......................................................................................................................................... 2

**Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009)** ........................................................... 10

**Gadelhak v. AT&T Servs., 950 F.3d 458 (7th Cir. 2020)** ........................................................ 9

**Gager v. Dell Fin. Servs., LLC, 727 F.3d 265 (3d Cir. 2013)** ............................................... 23

**Hall v. Smosh Dot Com, Inc., 72 F.4th 983 (9th Cir. 2023)** .................................................... 9

*Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025) ... 2, 17

*Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) .......................................................................................................... 2, 6

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) .................................................................................................... 5

*Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025) ................................................................................................. 14, 20

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ........................................ 13

*Lirones v. QuinStreet, Inc.*, 2024 WL 4198134 (N.D. Cal. 2024) ........................................ 17

*Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July 12, 2024) ... 7, 17

*Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) .................... 20

*Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) ........................................................................................... 7

*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013) ............................................................. 6

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ............ 1, 2

*Meyer v. Bebe Stores, Inc.*, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) ............................ 25

*Moore v. Triumph CSR Acquisition, LLC*, 2023 U.S. Dist. LEXIS 220876 (N.D. Ill. 2023) ........................................................................................................ 8

*Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396 (E.D. Tex. June 26, 2023) ................................................................................................. 7

*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) ........................................................ 4, 14

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ...................................... 12

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ........................................ 6

*Pfizer, Inc. v. Gov't of India*, 434 U.S. 308 (1978) .................................................. 4

*Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025) ............................ 16

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ............................................ 12

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ................................ 12, 13

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018) ............................ 22

*Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) .................................. 18

*Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019) ..................... 7

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025) ...................................................................................... 7

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ........................................................... 18

*Sunshine State Reg'l Ctr., Inc. v. Dir., USCIS*, 143 F.4th 1331 (11th Cir. 2025) .................. 6

*Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644 (N.D. Ohio Sept. 20, 2023) ........................................................................................... 23

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334 (S.D. Fla. 2022) ................................................................................................ 6

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) .......................... 22

*Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. 2020) ..................................................................... 10, 20

*Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025) ............................................................................... 2, 4, 7

*Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274 (D. Or. July 21, 2025).12,22

**Zimmer Radio of Mid-Missouri, Inc. v. FCC, 145 F.4th 828 (8th Cir. 2025)** ....................... **18, 20**

**Statutes**

**47 U.S.C. § 227(a)(2)(A)** ............................................................................ **5**

**47 U.S.C. § 227(a)(4)** ............................................................................ **4, 11**

**47 U.S.C. § 227(b)** ............................................................................ **6, 14**

**47 U.S.C. § 227(b)(1)(A)(iii)** ............................................................ **4**

**47 U.S.C. § 227(b)(1)(B)** ................................................................... **8**

**47 U.S.C. § 227(c)** ............................................................................ **1, 3**

**47 U.S.C. § 227(c)(1)** ............................................................................ **3, 12**

**47 U.S.C. § 227(c)(1)(A)** ................................................................... **16**

**47 U.S.C. § 227(c)(1)(D)** ................................................................... **13**

**47 U.S.C. § 227(c)(1)(E)** ................................................................... **16**

**47 U.S.C. § 227(c)(3)** ............................................................................ **1, 4**

**47 U.S.C. § 227(c)(3)(F)** ................................................................... **1, 11**

**47 U.S.C. § 227(c)(5)** ............................................................................ **13, 25**

**47 U.S.C. § 332(a)(1)(A)** ................................................................... **16**

**Regulations and Orders**

**47 C.F.R. § 64.1200(c)** ....................................................................... **2, 25**

**47 C.F.R. § 64.1200(e)** ....................................................................... **1, 15**

**47 C.F.R. § 64.2305(d)** ....................................................................... **5**

**FCC Report and Order, 18 FCC Rcd. 14014 (2003)** ....................... **1, 23**

**In re Rules and Regulations Implementing the TCPA, 18 F.C.C. Rcd. 14014 (2003) ..... 1, 16**

**In re Targeting and Eliminating Unlawful Text Messages, 38 F.C.C. Rcd. 12247 (2023)..1,18**

## INTRODUCTION

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," id. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); *In re Rules and Regulations Implementing the TCPA*, 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since the FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). C/T Install has now filed a Motion to Dismiss, and it's one that makes a big ask of this court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So C/T Install therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls to landline phones, upending protections for potentially hundreds of millions of Americans.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects

them from intrusive text messages, not just voice calls. C/T Install asks this Court to substitute its judgment for Congress's and the FCC's largely because most "residential" phones were still landlines in 1991, and text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out.

Indeed, just last month, another Court rejected the same argument Defendant presses. *See Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *2–3 (N.D. Ga. Aug. 7, 2025) (rejecting the claim that § 227(c) excludes cell phones). Other courts have reached the same conclusion. *Harriel v. Bealls, Inc.*, No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Ferrell v. Colourpop Cosmetics, LLC*, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal. Jul. 8, 2025); *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025). Finally, Defendant's suggestion that Plaintiff has not plausibly alleged a claim ignores the statutory structure and Plaintiff's detailed allegations.

This Court should decline Defendant's invitation to strip hundreds of millions of consumers of protections they have relied upon for decades. A faithful reading of the statute, the regulations, and the overwhelming weight of precedent compels the conclusion that Plaintiff's claim is squarely within the TCPA's scope, and Defendant's motion to dismiss should be denied.

## **BACKGROUND**

Plaintiff is the sole user of the 7615 cellular number and uses it exclusively for personal, residential purposes. (ECF No. 1 ¶¶ 8–10.) She registered that number on the National Do Not

Call Registry on May 15, 2024, yet received two unsolicited telemarketing texts from Defendant on Sept. 23 and Oct. 10, 2024. (Id. ¶¶ 11–16.) She never consented, suffered the privacy harms Congress targeted, and sues under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). (Id. ¶¶ 17–20.)

## ARGUMENT

### I.  47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers.

Through its motion to dismiss, Defendant argues that a private right of action under 47 U.S.C. § 227(c) applies only to residential telephone subscribers not cell phone users like Plaintiff. Another Court, however, very recently considered and rejected an identical argument:

> Defendant argues that [47 U.S.C. § 227(c)] does not apply to Plaintiff, because the term "residential subscriber" categorically excludes cell phone users from [its] protections. . . Plaintiff responds that the TCPA does not categorically exclude cell phone users and, because Plaintiff uses his cell phone only for personal purposes rather than business purposes, [47 U.S.C. § 227(c)] applies to the text messages he received. . . . The Court agrees with Plaintiff.

*Isaacs*, 2025 WL 2268359, at *2-3.[1]  The *Isaacs* Court has it right and this Court should follow suit.

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary

---

[1]      "It appears that since *McLaughlin Chiropractic*, every court examining this particular issue concerning 'residential' phones has held that [47 U.S.C. § 227(c)]'s provisions apply to cell phones." *Harriel*, 2025 WL 2379617, at *2; *see, e.g., Wilson*, 2025 WL 1784815, at *7 ("In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).").

meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019).

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term in the TCPA. *Id.* § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes, subject to certain exceptions. *Id.* Solicitations to cell phones fit that definition. First, to state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). The statute's breadth is deliberate: "telephone solicitation" covers a call or message sent to any person for commercial purposes. 47 U.S.C. § 227(a)(4). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion. For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*

That leaves the word "residential," which C/T Install's argument hinges on. But that word doesn't exclude cell phone subscribers, either. "Residential" is just the opposite of "business." *See Wilson*, 2025 WL 1784815, at *5. It refers to the purposes for which a telephone is used, not its physical characteristics or location. *See Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). This, of note, is how Congress used, and uses, the term. For example, in the original TCPA's statutory findings, Congress noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–

243, 105 Stat. 2394, § 2 (emphasis added). And the current text of the TCPA, as amended in 2005, contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A). Moreover, FCC regulations dating back to the 1990s explicitly define "residential subscriber" to mean "a subscriber . . . *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added).[2]

At bottom, therefore, the terms "residential telephone subscriber" and "residential subscriber" refer to a subscriber who uses his or her telephone—whether landline or cellular—"for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206. In turn, since 47 U.S.C. § 227(c) protects "residential telephone subscribers," or elsewhere "residential subscribers," 47 U.S.C. §§ 227(c)(1), (c)(3), it applies to personal cellular telephone subscribers.

In short, Defendant asserts that because 47 U.S.C. § 227(c) does not reference cellular telephones, but a separate section of the TCPA—47 U.S.C. § 227(b)—does, Congress must have intentionally excluded from 47 U.S.C. § 227(c) protection for cellular telephone subscribers. Defendant's interpretation, thus, actually invokes the canon that when "Congress includes particular language in one section of a statute but omits it in another section," the omission is presumptively intentional. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

But "[t]he force of any negative implication . . . depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). And context undercuts the inference Defendant seeks to draw because 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c) have "markedly different scope and structure." *Wilson*, 2025 WL 1784815, at *4. That is, while 47 U.S.C. § 227(b) identifies intrusive

---

[2]      *See also* 14 F.C.C. Rcd. 15550, 15692 (1999) ("Residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber.").

telemarketing practices based on the *technologies* involved, 47 U.S.C. § 227(c) focuses on protecting identified *people*—"residential subscribers"—from unwanted telephone solicitations. *See Isaacs*, 2025 WL 2268359, at *3. And that difference in structure and focus provides the most natural explanation for why "cellular telephones" are expressly mentioned in 47 U.S.C. § 227(b), but not 47 U.S.C. § 227(c).

As well, Defendant's proposed negative inference disregards Congress's intentional choice to use different terminology in the two different parts of the statute at issue—"residential telephone *line*" in 47 U.S.C. § 227(b) versus "residential telephone *subscriber*" in 47 U.S.C. § 227(c). And "when a statute uses one term in one place and a distinct term elsewhere, the difference matters." *Sunshine State Reg'l Ctr., Inc. v. Dir., US Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025). Congress, therefore, almost certainly intended "residential telephone *line*" and "residential telephone *subscriber*" to carry different meanings in the two different contexts. *See Cacho*, 739 F. Supp. 3d at 205. For this reason, then, opinions implying that the term "residential telephone line" excludes cellular telephones in 47 U.S.C. § 227(b)—like *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014)—have little to no utility for determining who is a "residential subscriber" in 47 U.S.C. § 227(c).

And all of this naturally aligns with the "express aim" of 47 U.S.C. § 227(c), which is to protect residential subscribers' "privacy rights." *Wilson*, 2025 WL 1784815, at *6 (quoting 47 U.S.C. § 227(c)(1), (2)). Indeed, "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024).

The cases relied upon by the Defendant do not alter this analysis. In comparison to the large case law to the contrary, the Defendant is only able to point to a handful of cases. These cases are unpersuasive outliers.

In *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the plaintiff received multiple telemarketing calls to his cellular telephone from the defendant in alleged violation of the TCPA and filed suit. The court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions. The court nevertheless awarded the plaintiff $33,000 in statutory damages. Indeed, subsequent decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones.[3]

Defendant also cites *Gaker v. Q3M Ins. Sols.* but omits critical context: *Gaker* was an unresolved magistrate recommendation. Additionally, Court later entered judgment for the plaintiff on liability. Thus, *Gaker*, if anything, betrays Defendant's own position. *Gaker* is oft-criticized, with the Jackson court characterizing it as "ill-founded." *Jackson*, 2024 U.S. Dist. LEXIS 8811, at *12, fn. 60. In *Cunningham* a serial *pro se* plaintiff failed to plead that his cellphone functioned as a residential line. *See Myrick v. Adapthealth, LLC,* No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *3 (E.D. Tex. June 26, 2023) ("Plaintiffs allegations regarding his cellular phone qualifying him as a residential telephone subscriber distinguish this case from the line of Cunningham cases cited by Defendants.").

---

[3] *See Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) ("we find that plaintiff's allegations pertaining to his cell phone—namely, that he used the cell phone for personal purposes, including booking vacations—are sufficient" to establish plaintiff was a "residential subscriber"); *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) (holding the same Plaintiff had stated a claim for calls to his residential cell phone on the Do Not Call Registry).

Defendant's reliance on *Moore v. Triumph CSR Acquisition, LLC*, 2023 U.S. Dist. LEXIS 220876, is misplaced. The *Moore* decision was limited to Section 227(b), which concerns restrictions on the use of automated telephone equipment, and did not involve Section 227(c) or its implementing regulation, 47 C.F.R. § 64.1200(c). The court stated, "[c]ourts widely hold that a cell phone is not a 'residential telephone line' within the meaning of subsection 227(b)(1)(B)" and "any calls to a cell phone cannot violate subsection 227(b)(1)(B)." *Moore*, 2023 U.S. Dist. LEXIS 220876, at *5.

Defendant's cramped reading of "residential subscriber" would gut the protections Congress created in § 227(c), excluding the vast majority of Americans who no longer maintain landlines and rely exclusively on cell phones for their residential use. That interpretation is inconsistent with the statutory text, the structure of the TCPA, the FCC's regulations, and the overwhelming weight of authority. As courts have recognized, "residential" describes the nature of the subscriber—not the wires or technology used to deliver the call. The statute protects people in their homes and private lives from unwanted solicitation, whether the intrusion comes by way of a copper landline or a wireless signal.

To adopt Defendant's position would not only defy Congress's intent, it would effectively dismantle the National Do Not Call Registry as a meaningful consumer-protection tool in the modern era. This Court should do what every Court to consider the issue following *Mclaughlin* has done and reject Defendant's invitation to narrow the TCPA in a way that would leave hundreds of millions of consumers without the protections Congress designed to safeguard their privacy.

## II.    Text Messages are "Calls" under the TCPA, as nearly every Court to consider the question has held.

Defendant next contends that a text message is not a "call" under the TCPA and that the

FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact.").

Defendant also relies on the order in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025); one of two cases that refused to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199.

"Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id*. (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id*. at *6 (collecting cases).

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added) (citing *Pallone-Thune TRACED Act*, (the "TRACED Act") PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in §227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969); citing *Bell v. New Jersey*, 461 U.S. 773, 785, and n.12 (1983)). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted

the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List.  47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").[4] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to

---

[4] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as C/T Install emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

>    **b.    Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.**

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in

violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[5] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and

---

[5] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[6]

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[7] Defendant heavily relies on *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025), but *Jones* is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4.

But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[8] And

---

[6] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

[7] *See, e.g.*, **Paging Network, Inc., Annual Report, at 8 (1993)**, available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

[8] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions. That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor C/T Install identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

        **c.**   ***Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call"***

*should still carry the day.*

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id.* at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details,"

accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395. Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lirones*, 2024 WL 4198134, at *7; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same.

As explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that

"reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

### d.  Furthermore, Defendant's argument asks this Court to apply the Incorrect Standard of Review.

Contrary to Defendant's contention, "when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. ***Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained***." *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) (emphasis added) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-392) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *see also Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("We consider a challenge to the agency's decision making under the APA's arbitrary-and-capricious standard next. But because Congress granted the FCC discretion to interpret Section 202(h) within the public interest, we decline to grant the petition on the basis that the FCC's definition of 'competition' is inconsistent with Section 202(h).").

Under the correct standard of review, it cannot be said that the FCC, under its grant of

18

authority from Congress, acted unreasonably or inconsistent with the statute when it extended the TCPA's protections, including the DNC Provision, to texts. **Congress adopted the FCC's interpretation** when it amended the TCPA. *See Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) ("In addition to the Supreme Court and the FCC, **Congress** has also made clear the TCPA's applicability to text messages.") (citing *TRACED Act*, PL 116-105, December 30, 2019, 133 Stat 3274. The Supreme Court and every Circuit Court have so agreed.

In *Davis*, the court applied the wrong standard of review, relying instead on *McLaughin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025). The applicable standard is not "appropriate respect" as the *Davis* court held, but instead an inquiry into whether the FCC acted reasonably and reasonably explained its exercise of discretion. Such is the case here because Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights").

Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) (citing 47 U.S.C. § 227(c)(1)(E)). Because the FCC exercised its discretion granted by statute and was rulemaking, the APA's deferential arbitrary-and-capricious standard applies. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate

deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025).

Under this standard, it cannot be said that the FCC's action was unreasonable or not reasonably explained. In the 2023 Order, the FCC explained its reasoning for clarifying and codifying the DNC protections to cover text message solicitations:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government.  On many devices, people immediately see some or all of the messages once received on the device, whereas they have the option to ignore unwanted calls.  This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams.  The rise of junk texts jeopardizes consumer trust in text messaging[,] frustrate[s] consumers, and [causes] serious harm.

*Id*. at ¶1. Accordingly, "the Commission has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant cites in support of its motion, court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Defendant concedes that for another section of the statute, it is not unreasonable to include texts as calls.

Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3)

'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018)).

Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, "unhesitatingly afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Moreover, as explained, the FCC's interpretation of a text message being a call is not at odds with the statute. Because the TCPA does not define the term "call", courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (quoting *Satterfield*, 569 F.3d at 953-54). "Other courts have adopted this definition in the TCPA context." *Id.* (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the

definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018).

The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding:

> [T]he FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. It cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.. . . On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

This Court should hold the same.

Defendant's request to exclude text messages from the protections afforded consumers under the TCPA also ignores that "the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). The outcome Defendant requests – allowing companies to spam consumers with unwanted text messages even after requests for the messages to stop – would result in that harm. Congress intended for the privacy protections of the TCPA to cover new technologies by leaving the term

"call" undefined thereby allowing the statute to continue to protect consumers. This Court should, respectfully, reject Defendant's myopic interpretation of the statute that would render it moot.

### III.    Plaintiff Plausibly Alleges She Is a "Residential Telephone Subscriber" — Confirmed by Her Declaration that Refutes the Defendant's Attacks.

Defendant insists that § 227(c) protects only landline users and further resorts to *ad hominem* attacks on Plaintiff, suggesting that she is a "serial TCPA litigant" who "maintains a multitude of telephone numbers in order to manufacture TCPA claims." (Mot. at 8–9.) That accusation is baseless and contradicted by sworn testimony.

The Complaint specifically alleges that Plaintiff is the regular and sole user of the 7615 number, that she uses it as her personal residential telephone number and not for business or commercial purposes, that she registered the number on the Do Not Call Registry on May 15, 2024, and that she subsequently received consumer telemarketing text messages from Defendant on September 23 and October 10, 2024. (ECF No. 1 ¶¶ 8–13, 17–20.) Those facts alone establish that Plaintiff qualifies as a "residential subscriber" entitled to invoke § 227(c). What's more, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers*." *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). Courts nationwide have agreed. *See, e.g.*, *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones."). As another Court held in a TCPA case last year, "Plaintiff alleges in the Amended Complaint that his cell phone number at issue in this case 'is his residential telephone number that is used

23

for personal purposes.' Am. Compl. ¶ 28. "This allegation, coupled with the TCPA's presumption that wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers,' is sufficient to allege that Plaintiff is a residential telephone subscriber under the TCPA." *Lourie v. Papa John's Int'l, Inc.*, 2024 U.S. Dist. LEXIS 119679, *15-16 (N.D. Ga. 2024). This Court should hold the same.

Plaintiff's sworn Declaration confirms these allegations. *See* Exhibit 1, Declaration of Virginis Cole. She explains that:

- her prior phone was destroyed during a severe storm, and her carrier assigned her the 7615 number with her replacement device (Cole Decl. ¶¶ 2–3);
- she has used that number exclusively for personal and household purposes, not for business (id. ¶¶ 4–5); and
- she has no other residential numbers that she uses for personal purposes (id. ¶¶ 7–8).

These sworn facts squarely defeat Defendant's smear. Plaintiff testifies that the 7615 number is her **only** residential number and she uses it **solely** as her household line. (Cole Decl. ¶ 8.) That testimony forecloses any tale of a "professional plaintiff" and exposes Defendant's rhetoric as pure speculation untethered to the record.

The TCPA asks whether the subscriber's use is residential—not whether a defendant can conjure motives or litigation history. Plaintiff's Complaint and Declaration allege exactly what § 227(c) requires: she is the subscriber of the 7615 number, uses it for personal residential purposes, registered it on the Do Not Call Registry, and nonetheless received Defendant's unsolicited telemarketing texts. (ECF No. 1 ¶¶ 8–13, 17–20; Cole Decl. ¶¶ 4–8.) That is more than sufficient at the pleading stage.

### IV.    The Plaintiff has pled a plausible claim for treble damages

Treble damages are available where violations are "willful or knowing." 47 U.S.C. § 227(c)(5); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). Courts interpret this standard to require intentional conduct, not knowledge of illegality—i.e., the defendant must knowingly perform the acts constituting the violation. *See Charvat v. Allstate Corp.,* 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014). Plaintiff alleges Defendant deliberately sent multiple marketing texts to her registered DNC number without any request or consent. Those facts readily permit an inference of willfulness at this stage, and courts routinely deny Rule 12 motions on similar (or thinner) allegations. *See Meyer v. Bebe Stores, Inc*., 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015). Any dispute about intent is a fact question for discovery, not a pleading defect.

### Conclusion

C/T Install's motion asks this Court to rewrite § 227(c) by (i) stripping "residential subscriber" of its ordinary, person-focused meaning and (ii) carving text messages out of "telephone solicitations." Both requests contradict the statute's text, structure, and purpose—and the FCC's long-standing rules that apply the National Do Not Call protections to residential cell-phone subscribers and to text solicitations. See 47 U.S.C. § 227(c)(1), (c)(3); 47 C.F.R. § 64.1200(c), (e). Plaintiff's allegations and sworn testimony fit squarely within that framework as the number is residential and the challenged texts are actionable telephone solicitations.

Adopting Defendant's contrary view would eviscerate the Do Not Call Registry in the modern era—denying protection to the millions who rely on a single mobile phone as their household line and creating a text-message loophole that swallows the statute's privacy promise. The TCPA does not permit that result and the motion should be denied.

Dated: September 13, 2025

/s/ Anthony I. Paronich
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com