# EXHIBIT 1

2025 WL 3549868
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Nikolay DILANYAN
v.
HUGO BOSS FASHIONS, INC. et al

Case No. 2:25-cv-05093-JLS-BFM
|
Filed December 3, 2025

**Attorneys and Law Firms**

Peng Shao, R23 Law APC, Los Angeles, CA, Jared Victor Walder, R23 Law APC, Los Angeles, CA, for Nikolay Dilanyan.

David M. Krueger, Pro Hac Vice, Benesch Friedlander Coplan and Aronoff, Cleveland, OH, Jesse K. Bolling, Enenstein Pham Glass and Rabbat LLP, Costa Mesa, CA, Stephanie A. Sheridan, Benesch Friedlander Coplan and Aronoff LLP, San Francisco, CA, for Hugo Boss Fashions, Inc.

**PROCEEDINGS: (IN CHAMBERS) ORDER (1) DENYING MOTION TO DISMISS (Doc. 22); (2) CERTIFYING ORDER FOR INTERLOCUTORY APPEAL; AND (3) STAYING ACTION PENDING APPEAL**

Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE

 *1  Before the Court is a motion to dismiss filed by Defendant Hugo Boss Fashions, Inc. (Mot., Doc. 22.) Plaintiff Nikolay Dilanyan opposed, and Defendant replied. (Opp., Doc. 24; Reply, Doc. 25.) Having reviewed the papers and heard oral arguments, and for the following reasons, the Court DENIES Defendant's motion to dismiss.

**I. BACKGROUND**
Between March 12, 2022, and May 8, 2025, Defendant sent at least 289 text messages to Plaintiff's personal cell phone either before 8 a.m. or after 9 p.m. (Compl. ¶¶ 25–32, Doc. 2.) On June 4, 2025, Plaintiff initiated this putative class action against Defendant, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(1), by sending text messages at unlawful times. (Id. ¶¶ 40, 64–70.) Plaintiff seeks to represent a class of individuals who have "received more than one telemarketing text message from Defendant ... during any twelve-month period." (Id. ¶ 44.)

On August 28, 2025, Defendant filed a motion to dismiss, arguing Plaintiff does not have a private right of action under § 227(c)(5) of the TCPA because Plaintiff alleges that he received only text messages, not telephone calls. (Mot.)

**II. LEGAL STANDARD**
In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**III. ANALYSIS**
Plaintiff alleges that Defendant violated 47 C.F.R. § 64.1200(c)(1), which provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m." (Compl. ¶ 68.) Plaintiff brings this action pursuant to 47 U.S.C. § 227(c)(5), which enables "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" to bring an action for damages or injunctive relief. (Id. ¶ 67.) Defendant argues that Plaintiff cannot bring an action under § 227(c)(5) of the TCPA because the text messages Plaintiff received are not "telephone call[s]" within the meaning of § 227(c)(5). (Mot. at 6.)

**A. "Telephone call" under § 227(c)(5)**

"[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Courts must "interpret statutory terms in accordance with their ordinary meaning." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015). By striving to interpret a statute based on its text, a court "avoid[s] the pitfalls that plague too quick a turn to the more controversial realm of legislative history." *Lamie*, 540 U.S. at 536. "Courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024); *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) (holding that district courts should "independently assess[ ] whether an agency's interpretation of the relevant statute is correct").

**\*2** The Court reads the ordinary meaning of "telephone call" to exclude "text message." When the TCPA was enacted in 1991, text messaging did not exist, so the plain meaning of "telephone call" at the time could not possibly include a text message. *See Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at \*4 (C.D. Ill. July 21, 2025). And to the ordinary person today, telephone calls and text messages are two distinct forms of communication—one involves speaking with or attempting to speak with someone in real time, and the other involves a one-way, often written communication. As Defendant articulates, "[n]o ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue.' " (Mot. at 11.)

Subsequent amendments to the TCPA support the Court's plain meaning analysis. After enacting § 227(c)(5), Congress amended § 227(e) of the TCPA, which prohibits the transmittal of a misleading phone number, by replacing the reference to "a call made using a telecommunications service or IP-enabled voice service" with "a call made using a voice service or a text message sent using a text messaging service." *See* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). That Congress updated § 227(e) to include text messages in addition to calls, but has not similarly amended § 227(c)(5), suggests that Congress views a text message as a distinct form of communication to which § 227(c)(5)'s private right of action does not apply. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (quoting *Kucana v. Holder*, 558 U.S. 233, 249 (2010)).

In his opposition, Plaintiff does not argue that the plain meaning of a "telephone call" encompasses a text message. [1] (*See* Opp. at 4–5.) Instead, Plaintiff points to 47 C.F.R. § 64.1200(c)(1), the regulation promulgated under § 227(c), which prohibits the initiation of "any telephone solicitation to any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m." (Opp. at 4.) Plaintiff further notes that the TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of ... property, goods, or services ...." 47 U.S.C. § 227(a)(4); (Opp. at 4). Plaintiff contends that the private right of action created by § 227(c)(5) should be read in harmony with this regulation, but such a reading would contravene the plain language of § 227(c)(5), which references only telephone calls, not telephone solicitations. In fact, § 227(a)(4)'s definition of a "telephone solicitation" as encompassing both "a telephone call and message" undercuts Plaintiff's argument; like the language in § 227(e), it suggests that messages are distinct from calls under the TCPA. Indeed, the case to which Plaintiff cites, *Wilson v. Skopos Financial, LLC*, reasoned that "the FCC has *expanded* the TCPA to apply to text messages," implicitly recognizing that the language of § 227(c)(5) itself does not include text messages. 2025 WL 2029274, at \*4 (D. Or. July 21, 2025) (emphasis added).

---

[1] At oral argument, Plaintiff argued that the definition of a "telephone call" does encompass a "text message" because "telephone call" should be read in a functional sense, as an attempt to get into communication with somebody, rather than in a technological sense. For the reasons articulated above, the Court disagrees that "telephone call" is defined so broadly.

**\*3** Plaintiff alternatively contends that the Court's interpretation of § 227(c)(5) must align with the Ninth Circuit's conclusion in *Satterfield v. Simon & Schuster, Inc.* that "a text message is a 'call' within the meaning of the TCPA." 569 F.3d 946, 952 (9th Cir. 2009); (Opp. at 6). Defendant offers several compelling arguments as to why *Satterfield* may not apply. The Ninth Circuit in *Satterfield* considered the definition of "to make any call" within § 227(b)(1)(A), a separate provision from § 227(c)(5), which

uses the distinct term "telephone call." And the Ninth Circuit reached its conclusion only after deferring under *Chevron* to the FCC's determination that a "call" encompasses a "text message." *Id.* at 954. Because courts may no longer "defer to an agency interpretation of the law simply because a statute is ambiguous," *Loper Bright*, 603 U.S. at 413, *Satterfield*'s finding that the FCC's interpretation of "call" is reasonable does not control the Court's present statutory analysis.

However, *Satterfield*'s conclusion that "a text message is a 'call' within the meaning of the TCPA" appears to be broad enough to control here. *Satterfield*, 569 F.3d at 952. *Satterfield* does not limit its holding to only § 227(b)(1)(A); by contrast, it states that "a text message is a 'call' *within the meaning of the TCPA*," *Satterfield*, 569 F.3d at 952 (emphasis added), suggesting that a text message is also a "telephone call" under § 227(c)(5). And *Satterfield*'s holding remains binding despite *Loper Bright*'s repudiation of *Chevron* deference: because *Loper Bright* explicitly did "not call into question prior cases that relied on the *Chevron* framework," *Satterfield* is not "clearly irreconcilable" with *Loper Bright*.[2] *Loper Bright*, 603 U.S. at 412; *Miller v. Gammie*, 335 F.3d 889, 900 (2003) (holding that Ninth Circuit cases are "effectively overruled" when they are "clearly irreconcilable" with intervening Supreme Court authority). Further, several other courts within this circuit have considered the meaning of "telephone call" under § 227(c)(5) after the Supreme Court's decision in *Loper Bright*, and they have followed *Satterfield* to find that a text message is a "telephone call." *See, e.g., Barton v. Delfgauw*, 2025 WL 2402131, at *3 n.1 (W.D. Wash. Aug. 18, 2025); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025); *Messerlian v. JP Grp. LA*, 2025 WL 2074360, at *5 (C.D. Cal. May 23, 2025). The Court is therefore reticent to conclude that *Satterfield* does not control. Accordingly, because "a text message is a 'call' " under *Satterfield*, and Plaintiff alleges that he has received multiple text messages from Defendant, the Court concludes that Plaintiff is entitled to bring an action under § 227(c)(5) as "[a] person who has received more than one telephone call within any 12-month period."

---

[2]  Defendant argues that *Loper Bright* overruled *Satterfield*. (Mot. at 10.) In response to Plaintiff's argument that "the [*Loper Bright*] Court explained that cases decided under *Chevron* remain binding" (Opp. at 6), Defendant emphasizes that *Loper Bright* maintained statutory *stare decisis* only for "[t]he holdings of [prior] cases that specific agency actions are lawful." (Reply at 9–12); *Loper Bright*, 603 U.S. at 412. The specific agency action at issue in *Satterfield*, Defendant contends, was the FCC's specific interpretation of § 227(b), so *Satterfield*'s holding is not entitled to *stare decisis* here. (Reply at 10–11.) However, Defendant's reliance on the words "specific agency action" is not enough to make *Satterfield*'s application to § 227(c)(5) "clearly irreconcilable" with *Loper Bright* in light of *Loper Bright*'s explicit statement that it "does not call into question prior cases that relied on the *Chevron* framework." *Loper Bright*, 603 U.S. at 412; *see United States v. Alaska*, 151 F.4th 1124, 1136 (9th Cir. 2025) ("Clear irreconcilability is a high standard. It is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent.") (citation modified).

**\*4** Defendant's motion to dismiss is therefore DENIED.

### B. Interlocutory Appeal

Although the Court denies Defendant's motion to dismiss, the Court agrees with Defendant that this issue is appropriate for interlocutory appeal because of the unique questions raised by the application of *Satterfield* to the instant action. A district court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) "[i]n rare circumstances[.]" *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). To certify an order for interlocutory appeal, the district court must determine that the order "meets the three certification requirements outlined § 1292(b): '(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation.' " *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)). "[T]he district court may certify the order for interlocutory appeal in the text of that order[.]" *Id.* at 1131.

The Court concludes that the first requirement is satisfied. "A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.' " *Id.* at 1130 (citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026). Here, there are two central questions of law. First, the Ninth Circuit

may reconsider this Court's analysis of the binding effect of *Satterfield* in light of *Loper Bright.* Second, the Ninth Circuit may interpret the meaning of "telephone call" within § 227(c)(5). *See Burton v. Prudential Ins. Co. of Am.*, 2014 WL 10537434, at \*2 (C.D. Cal. Sept. 12, 2014) ("[T]he Ninth Circuit has found 'novel question[s] of statutory interpretation' to be particularly appropriate for occasions for certification.") (quoting *Joffe v. Google, Inc.*, 746 F.3d 920, 924 (9th Cir. 2013)). Further, the resolution of these questions will determine the meaning of a "telephone call" within § 227(c)(5) of the TCPA, which will materially affect the outcome of the litigation, because a determination that a text message is not a telephone call would result in the dismissal of this action.

Second, "[t]he substantial grounds prong is satisfied when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *ICTSI Oregon, Inc.*, 22 F.4th at 1130 (internal quotation marks and citation omitted). "[T]his prong is satisfied ... if novel and difficult questions of first impression are presented." *Id.* (internal question marks and citation omitted). The Court determines that this prong is satisfied because the Ninth Circuit has not yet had the opportunity to reexamine *Satterfield* following the Supreme Court's decision in *Loper Bright.* And where district courts have interpreted the language of § 227(c)(5) after *Loper Bright*, they have reached differing conclusions. *Compare Jones*, 2025 WL 2042764, at \*4 ("[U]nder a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."), *with Wilson*, 2025 WL 2856295, at \*4 ("[N]othing in the text, structure, or purpose of the TCPA suggests the distinction between written and oral communications[.]").

 **\*5** Third, "the materially advance prong is satisfied when the resolution of the question may appreciably shorten the time, effort or expense of conducting the district court proceedings." *ICTSI Oregon, Inc.*, 22 F.4th at 1131 (internal question marks and citation omitted). As noted above, a determination on appeal that text messages are not telephone calls under § 227(c)(5) of the TCPA would result in the dismissal of this action, as Plaintiff alleges that he has received only text messages from Defendant. The resolution of an interlocutory appeal may therefore conserve resources that would be expended if the parties were to continue litigating this action to reach a final judgment. This prong is satisfied.

Accordingly, Defendant's request for interlocutory appeal is GRANTED. "Although the filing of an interlocutory appeal does not automatically stay proceedings in the district court, the district court has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.' " *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008) (citing *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)). The Court concludes that allowing the litigation to proceed when the interlocutory appeal is pending could waste time and resources, as the appeal may result in the dismissal of the action, rending such efforts moot. The Court therefore STAYS this action pending resolution of the interlocutory appeal.

## IV. CONCLUSION

For the above reasons, Defendant's motion to dismiss is DENIED.

The Court CERTIFIES this Order for interlocutory appeal. Defendant must file its Petition for Permission to Appeal within **ten (10) days** of the entry of this Order. *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5. This action is STAYED pending the resolution of the appeal. The parties are ORDERED to file a joint status report within **ten (10) days** of a final determination of the appeal from the Ninth Circuit. If Defendant does not timely file a Petition seeking appeal, the parties are ORDERED to file a joint status report within **ten (10) days** of Defendant's deadline to file its Petition.

**All Citations**

Slip Copy, 2025 WL 3549868

---